IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BHANDARA FAMILY LIVING TRUST | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| UNDERWRITERS AT LLOYD'S, LONDON F/K/A CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, AMRISC, LLC, AND US RISK, LLC | § § § § § § § § § § § § § §    CIVIL ACTION NO. 4:19-cv-968 |
| Defendants. | § |

**DEFENDANT U.S. RISK, LLC'S REPLY
IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND
<u>MOTION TO DISMISS OR, ALTERNATIVELY, STAY PROCEEDINGS</u>**

Defendant U.S. Risk, LLC ("U.S. Risk") submits this Reply in Support of its Motion to Compel Arbitration and Motion to Dismiss or, Alternatively, Stay Proceedings (Doc. No. 15).

1

## I.     INTRODUCTION

The Policy's arbitration provision is not unconscionable under state or federal law. Further, Texas law or public policy is not a defense to arbitration where, as here, the arbitration agreement is governed by the U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"). If the Court disagrees, it should sever out the offending terms and compel arbitration of Plaintiff's claims pursuant to the surviving provisions. Plaintiff appears to concede that if the Policy's arbitration provision is valid, the question of arbitrability should be decided by the arbitrators.

Regarding whether its underlying claims against U.S. Risk are arbitrable, Plaintiff fails to acknowledge how the Policy and its language are the very foundation of Plaintiff's claims against U.S. Risk. Those claims are based entirely upon the allegations that U.S. Risk "failed to disclose and/or intentionally omitted a critical provision of [the] Policy. . . ." Pet. at 9. But in its Response (Doc. No. 22), Plaintiff denies that the allegations against U.S. Risk refer to, presume the existence of, arise out of, or are related to the Policy. Response at 10. Plaintiff cannot have it both ways; it cannot rely upon the Policy to impose liability against U.S. Risk, but then disown the Policy to avoid arbitrating those very claims. Such a result would be inequitable.

## II. ARGUMENT AND AUTHORITIES

U.S. Risk incorporates by reference the Reply Brief submitted by the Insurer Defendants (Doc. No. 17) and adopts the arguments presented therein. It presents the following in further support of its Motion:

### A. The arbitration provision is not unconscionable.

Plaintiff's contention that the arbitration provision is unconscionable fails to acknowledge the commercial context here. Plaintiff is a business entity, and the Policy is a commercial-property policy. *See* Exhibit 1 to the Appendix in Support of the Motion (APP. 010) (page 1 of 49) (Compass Commercial Property Form).[1] The Policy provides policy limits of the lesser of $32 million or the amounts reflected on a statement of values for the insured locations, with lesser sublimits for specific circumstances. APP. 010-011 (pages 2-3 of 49). The *Olshan* case cited by Plaintiff involved arbitration with homeowners, not commercial entities, but even there the Texas Supreme Court compelled arbitration where the arbitration provisions were governed by Texas law and the Federal Arbitration Act. *In re Olshan Found. Repair Co.*, LLC, 328 S.W.3d 883, 899 (Tex. 2010). Plaintiff has not argued or submitted any evidence that it did not have an opportunity to read the Policy. *See Lexington Ins. Co. v. Exxon Mobil Corp.*, No. 09-16-00357-CV, 2017 WL 1532271, 2017 Tex. App. LEXIS 3819, *10 (Tex. App.—Beaumont Apr. 27, 2017, no pet.); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005) (per curiam). Nor has Plaintiff

---

[1] "APP. _" references herein refer to the Appendix in Support of U.S. Risk's Motion.

established that the arbitration provision is so one-sided as to be unenforceable. Arbitration agreements are no less enforceable when they arise in an insurance setting. *See Lexington Ins. Co.*, 2017 Tex. App. LEXIS 3819 at *7-8.

Plaintiff's contention that the agreed-to forum and arbitration process is unconscionable is grounded in speculation and unwarranted cynicism. It is entirely appropriate that a dispute over insurance coverage under a commercial policy—which is the fundamental basis for this litigation—should be determined by persons with insurance expertise. There is no reason to suggest that Plaintiff will not receive a fair hearing in arbitration. If the arbitrators do show partiality, corruption, misconduct or misbehavior, Plaintiff will have a remedy in vacatur under 9 U.S.C. § 10, to the extent such a remedy is consistent with the Convention. *See* 9 U.S.C. § 208. The Court should not prejudge how the arbitration process will play out before any arbitrators have been appointed or proceedings held. Similarly, if the arbitration agreement is contrary to public policy, the Convention requires Plaintiff to "wait to assert those arguments when challenging the arbitrator's decision following arbitration." *See Simon v. Princess Cruise Lines, Ltd.*, Civ. Action No. G-13-0444, 2014 WL 12617820, *3 (S.D. Tex. May 19, 2014).[2]

In the alternative, if the Court determines that any portion of the arbitration provision is unenforceable due to unconscionability, the solution is not to strike the

---

[2] A copy of the Convention is available from the United Nations at https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/new-york-convention-e.pdf and attached hereto.

4

arbitration provision in its entirety. Instead, the Court can and should sever out the offending provision. *See Shipman Agency, Inc. v. TheBlaze Inc.*, 315 F. Supp. 3d 967, 974-975 (S.D. Tex. 2018); *Ivie v. Multi-Shot*, No. 2:16-CV-166, 2016 WL 4446634, 2016 U.S. Dist. LEXIS 112795, *5 (S.D. Tex. Aug. 24, 2016). The Court should then compel the parties to arbitrate their dispute under the remaining terms of the arbitration provision.

> **B. The Convention precludes an unconscionability challenge to the arbitration provision.**

Where the Convention applies to an agreement to arbitrate, a court must compel arbitration unless the agreement is null and void, inoperative, or incapable of being performed. *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 339, 341 (5th Cir. 2004). Plaintiff challenges the arbitration provision because it waives rights under the Texas Insurance Code and Texas common law, and because the provision is allegedly one-sided. Response at 6. These are not grounds for avoiding an arbitration agreement under the Convention. *See Simon*, 2014 WL 12617820 at *3 (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005); *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000); *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1276 (11th Cir. 2011)). Unconscionability based on state-law grounds does not make an arbitration agreement null and void under the Convention; rather, the basis for an arbitration provision being null and void is limited to situations such as fraud, mistake, duress, or waiver that can be applied neutrally on an international scale. *Id.*; *see Internaves De Mex. S.A. De C.V. v.*

5

*Andromeda S.S. Corp.*, 247 F. Supp. 3d 1294, 1298 n.4 (S.D. Fla. 2017) (Convention does not recognize a public policy defense or permit an unconscionability defense), *rev'd on other grounds* 898 F.3d 1087 (11th Cir. 2018); *see also Davis v. Cascade Tanks LLC*, No. 3:13-cv-02119-MO, 2014 WL 3695493, 2014 U.S. Dist. LEXIS 100958, *42 (D. Or. July 24, 2014) ("An unconscionability defense is a poor fit for the Convention's policy of unified standards for the enforcement of arbitration agreements and awards.").

The *Simon* court specifically rejected a public-policy defense to arbitration, observing that public policy is referenced as a defense by the Convention only at the enforcement stage. *See* 2014 WL 12617820 at *3 (citing Convention, art. V(2)). Similarly, the Convention provides at the enforcement stage that enforcement of an award may be refused on the basis that the agreement "is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made." Convention, art. V(1)(a). To the extent Plaintiff wishes to assert an unconscionability defense, it must await an award to be issued in the arbitration.

### C. The arbitrability question is for the arbitrators.

The Policy's arbitration provision delegates to the arbitrators the power to determine whether Plaintiff's claims against U.S. Risk are arbitrable. Plaintiff appears to concede that the question of arbitrability should be decided by the arbitrator if the Policy's arbitration provision is valid. It makes no response to U.S. Risk's contention that the arbitration provision contains a valid delegation clause.

6

The Court should send this case to arbitration for a determination of the arbitrability question and for further proceedings as the arbitrators deem appropriate.

### D. U.S. Risk is entitled to arbitration as a non-signatory.

It cannot be denied that Plaintiff is seeking direct and substantial benefits under the contract that contains the arbitration provision. First, it seeks coverage under the Policy, and its claims against the Insurer Defendants are based upon its contention that it is entitled to coverage. More fundamentally, Plaintiff must rely entirely on the Policy and its terms—indeed, the terms of the arbitration provision itself—in order to prosecute its claims against U.S. Risk. The claims against U.S. Risk are plainly intertwined with the Policy that Plaintiff is suing under, and it is obvious that they depend on the Policy's existence and must be determined by reference to it. Accordingly, the Court should compel the claim to arbitration. *See Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018); *Choctaw Generation L.P. v. Am. Home Assur. Co.*, 271 F.3d 403, 404 (2d Cir. 2001).

Plaintiff's contention that its intended use of the agreement for evidentiary purposes somehow creates an exception to the rule is wrong. The *Randle* opinion cited by Plaintiff itself suggests otherwise. *See Randle v. Metro. Transit Auth. of Harris Cty.*, No. H-18-1770, 2018 WL 4701567, 2018 U.S. Dist. LEXIS 169033 (S.D. Tex. Oct. 1, 2018). As Plaintiff acknowledges, the plaintiff in *Randle* relied upon the agreement containing the arbitration provision as proof of his claim in the case, to show he was an employee entitled to overtime payments. *See* Response at 9. Plaintiff

7

is using the Policy, and even the arbitration provision itself, as evidence of its claims against U.S. Risk. *See* Response at 11. Further, the *Randle* opinion recognized that the party seeking to enforce an arbitration provision under direct-benefits estoppel does not have to be sued on the contract. *See* 2018 U.S. Dist. LEXIS 169033, at *27 (party seeking benefits under the contract may do so by suing under the contract, "or otherwise" seeking such benefits).

Plaintiff attempts to impose requirements under the estoppel theories that are not recognized in the case law. It contends that a plaintiff's claims against a non-signatory must have arisen after origination of the contract containing the arbitration clause. *See* Response at 4, 10, 13. Plaintiff cites no authority supporting this restriction. The arbitration provision at issue here by its terms applies to matters preceding execution of the contract: "All matters in difference . . . in relation to this insurance, *including its formation* and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out." APP. 038-039 (Policy pages 29-30 of 49) (emphasis added).

Plaintiff's efforts to distinguish U.S. Risk's authorities from New York and the Second Circuit miss the point. All provide that a non-signatory may compel arbitration when the claims against it are intertwined with a contract signed by the estopped party that includes an arbitration provision. *See Hoffman v. Finger Lakes Implementation, LLC*, 789 N.Y.S.2d 410, 415 (N.Y. Sup. Ct. 2005); *Kellman v Whyte*, 129 A.D.3d 418, 418 (N.Y. App. Div. 2015); *HG Estate, LLC v. Corporacion Durango,*

8

*S.A. de C.V.*, 271 F. Supp. 2d 587, 593 (S.D.N.Y. July 21, 2003). That is undeniably the case here.

Without conceding that Texas law applies, U.S. Risk also notes that Plaintiff fails to distinguish *Harries v. Stark* and *Smith v. Kenda Capital*. Those cases involved fraudulent-inducement claims, which are analogous to Plaintiff's claims against U.S. Risk based upon alleged non-disclosure of the Policy's terms. The courts in those cases applied the agreements' forum-selection clauses to the claims against the non-signatories under the principles set forth in *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000). In *Harries*, one basis for the fraudulent-inducement claim was that the agreement containing the forum-selection clause did not contain a promissory note as promised, and the alleged injury to the claimant resulted from the transaction arising under the agreement. *See Harries v. Stark*, No. 3:14-CV-2684-L, 2015 WL 4545071, 2015 U.S. Dist. LEXIS 98044, *3, 26 (N.D. Tex. July 28, 2015). In *Smith*, the claimant sued for fraudulent inducement of his employment contract based upon representations made to him relating to his rights under a related agreement with the employer's affiliate that contained a forum-selection clause. *See Smith v. Kenda Capital, LLC*, 451 S.W.3d 453, 455-56, 459-60 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Smith asserts that he was fraudulently induced to sign the Employment Contract with Kenda Subsidiary because he relied on Kenda Subsidiary's misrepresentations and omissions concerning Depository Receipts issued to him by Kenda Parent under the Carry Agreement."). Citing case law applying estoppel when a signatory's claim against a

9

nonsignatory references or presumes the existence of the written agreement containing the arbitration or forum-selection clause, the court applied direct-benefits estoppel to require the claimant to bring his claims in England. *Id.* at 458-59, 461. And Plaintiff acknowledges that the *Smith* court looked to whether the contract included other terms "upon which the signatory plaintiff must rely to prosecute its claims." Response at 11 (citing 451 S.W.3d at 460). That is the case here, as Plaintiff bases its claims against U.S. Risk upon alleged non-disclosure of terms in the arbitration provision other than the core language requiring "all matters in difference" in relation to the insurance to be arbitrated.

### E. The Court should stay this litigation if it does not compel arbitration as to all defendants.

If the Court determines that only some of Plaintiff's claims are referable to arbitration, then it should stay this action under 9 U.S.C. § 3 or, alternatively, under its discretionary authority. If the Court does not compel the claims against U.S. Risk to arbitration, a stay is appropriate under Section 3 where the disputes involve the same operative facts, the claims asserted in the two proceedings are inherently inseparable, and the litigation has a critical impact on the arbitration. *Rainier DSC 1, L.L.C. v. Rainer Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016). As noted previously, Plaintiff has alleged U.S. Risk was closely involved with the origination of the Policy, both in proposing the Policy and coverages to Plaintiff, Pet. at 9, and in developing the coverage and selling portions of the risk to the Insurance Defendants, Pet. at 6. If Plaintiff succeeds on its claims against the Broker

Defendants, that outcome could undermine the Insurer Defendants' position regarding the enforceability of the arbitration provision.

If a Section 3 stay is not available, the Court should stay the action under its discretionary authority. *See In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (on remand district court had discretion to stay claims between non-arbitrating parties pending outcome of the arbitration); *Qualls v. EOG Res., Inc.*, No. H-18-666, 2018 WL 2317718, 2018 U.S. Dist. LEXIS 85429, *7 (S.D. Tex. May 22, 2018) (discretionary stay appropriate because non-arbitrable claims will require the resolution of issues that will be resolved during arbitration). Plaintiff fails to address U.S. Risk's contention that its claims against U.S. Risk are premature. Damages are an essential element of a cause of action, and at this point Plaintiff's damages are entirely speculative for the reasons noted in the Motion. Further, it would be unfair for U.S. Risk to potentially incur an adverse judgment in this Court, if at the same time Plaintiff succeeded in arbitration on its claims against the other defendants. Such a contrary result would be inequitable.

## Conclusion

Defendant U.S. Risk, LLC respectfully requests the Court to grant its motion and enter an order compelling Plaintiff's claims against it to arbitration as provided in the Policy and dismissing this litigation or, alternatively, staying it until the completion of the arbitration process.

September 25, 2019	Respectfully submitted,

/s/ Kyle A. Owens
Thomas B. Alleman 17017485/SDTX 10784
Attorney-in-charge
Kyle A. Owens 24046573/SDTX  590511
of
DYKEMA GOSSETT PLLC
1717 Main Street, Suite 4200
Dallas, Texas 75201
214.698.7830 Phone
855.216.6218 Fax

**ATTORNEYS FOR DEFENDANT**
**U.S. RISK, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record on September 25, 2019, in compliance with the Federal Rules of Civil Procedure.

/s/ *Kyle A. Owens*
Attorney for Defendant

4839-6353-9111.2